UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X   ECF Case

BRISTOL-MYERS SQUIBB COMPANY,

               Plaintiff,

               vs.

MATRIX LABORATORIES LIMITED, N/K/A
MYLAN LABORATORIES LIMITED,

               Defendant.

--------------------------------------------------------------- X

Case No. 12-CV-5846 (PAE)

**PLAINTIFF BRISTOL-MYERS SQUIBB COMPANY'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND IN SUPPORT OF ITS
MOTION FOR JURISDICTIONAL DISCOVERY**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 4

I.   Matrix's Motion To Dismiss The Complaint For Lack Of Personal Jurisdiction
     Should Be Denied. .......................................................................................... 4

     A.   Relevant Standard. .................................................................................. 4

     B.   Matrix Is Subject To Personal Jurisdiction. ............................................. 6

          1.   Matrix Is Subject To General Jurisdiction. ..................................... 6

          2.   Matrix Is A Mere Department of Mylan. ......................................... 9

          3.   Matrix Is Subject To Specific Jurisdiction. ..................................... 13

          4.   A Finding of Personal Jurisdiction Does Not Violate Constitutional
               Due Process. ................................................................................ 16

II.  In The Alternative, Jurisdictional Discovery From Matrix Is Warranted. ....................... 17

     A.   Relevant Standard. .................................................................................. 17

     B.   Jurisdictional Discovery Is Appropriate To Develop A Full Record On
          Personal Jurisdiction. .............................................................................. 18

III. Matrix's Motion To Dismiss the Complaint For Failure To State A Claim Should
     Be Denied. ...................................................................................................... 21

CONCLUSION ...................................................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.I. Trade Fin., Inc. v. Petra Bank*,
   989 F.2d 76 (2d Cir. 1993)...............................................................................5

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
   98 F.3d 25 (2d Cir. 1996)..........................................................................14, 15

*Allojet PLC v. Vantage Assocs.*,
   2005 WL 612848 (S.D.N.Y. Mar. 15, 2005) ......................................................17

*APWU v. Potter*,
   343 F.3d 619 (2d Cir. 2003)............................................................................17

*Arquest Inc. v. Kimberly-Clark Worldwide, Inc.*,
   2008 WL 2971775 (S.D.N.Y. July 31, 2008) ....................................................6

*Bethlehem Steel Co. v. Turner Constr. Co.*,
   2 N.Y.2d 456 (1957)......................................................................................23

*BHP Trading (UK) Ltd. v. Deep Sea Int'l Shipping Co.*,
   1991 WL 198747 (S.D.N.Y. Sept. 23, 1991).....................................................18

*Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*,
   2010 WL 976379 (D. Del. Feb. 9, 2010) ...........................................................11

*Broughel v. Battery Conservancy*,
   2010 WL 1028171 (S.D.N.Y. Mar. 16, 2010) ...................................................21

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)...................................................................................6, 16

*D.H. Blair & Co., Inc. v. Gottdiener*,
   462 F.3d 95 (2d Cir. 2006)................................................................................4

*DaimlerChrysler AG v. Bauman*,
   No. 11-965 (2013)...........................................................................................9

*DCA Food Indus. Inc. v. Hawthorn Mellody, Inc.*,
   470 F. Supp. 574 (S.D.N.Y. 1979) .....................................................................9

*Deutsche Bank Secs., Inc. v. Montana Bd. of Inv.*,
   7 N.Y.3d 65 (2006).......................................................................................14

ii

*Dorfman v. Marriott Intern. Hotels, Inc.*,
   2002 WL 14363 (S.D.N.Y. Jan. 3, 2002) ...........................................................................11

*Energy Brands Inc. v. Spiritual Brands, Inc.*,
   571 F. Supp. 2d 458 (2d Cir. 2008) .........................................................................5, 13, 16

*ESI, Inc. v. Coastal Corp.*,
   61 F. Supp. 2d 35 (S.D.N.Y. 1999) ......................................................................5, 6, 9, 14

*Exclaim Assocs. Ltd. v. Nygate*,
   10 Misc. 3d 1063(A) (N.Y. Sup. Ct. 2005)..........................................................................20

*Freeman v. Gordon & Breach, Science Publishers, Inc.*,
   398 F. Supp. 519 (S.D.N.Y. 1975) .................................................................................9, 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   131 S. Ct. 2846 (2011)................................................................................................ passim

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
   425 F.3d 158 (2d Cir. 2005)......................................................................................... 13, 20

*Gundlach v. Int'l Bus. Mach. Corp.*,
   2012 WL 1520919 (S.D.N.Y. 2012)....................................................................................4, 5

*Halas v. Dick's Sporting Goods*,
   105 A.D.3d 1411 (4th Dep't 2013)......................................................................................18

*High River Ltd. P'ship v. Mylan Labs, Inc.*,
   353 F. Supp. 2d 487 (M.D.Pa. 2005) ..................................................................................10

*Hollenbeck v. Comeq, Inc.*,
   2007 WL 2484299 (N.D.N.Y. Aug. 28, 2007) ....................................................................17

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)....................................................................................................... 5, 16

*Iovate Health Sci., Inc. v. Masuda*,
   2009 WL 2878526 (W.D.N.Y. Sept. 2, 2009) .....................................................................19

*J. McIntyre Mach., Ltd. v. Nicastro*,
   131 S. Ct. 2780 (2011).........................................................................................................7

*Jazini v. Nissan Motor Co.*,
   148 F.3d 181 (2d Cir. 1998)..........................................................................................5, 6, 11

*Klinghoffer v. S.N.C. Achille Lauro*,
   937 F.2d 44 (2d Cir. 1991)............................................................................................10, 11

*Mandarin Trading Ltd. v. Wildenstein,*
 16 N.Y.3d 173 (2011) ........................................................................21, 22

*Palmieri v. Estefan,*
 793 F. Supp. 1182 (S.D.N.Y. 1992) ..............................................................4

*PDK Labs, Inc. v. Friedlander,*
 103 F.3d 1105 (2d Cir. 1997) ......................................................................5

*Pension Comm. Of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,*
 2006 WL 708470 (S.D.N.Y. Mar. 20, 2006) ...........................................17

*Ruhrgas AG v. Marathon Oil Co.,*
 526 U.S. 574 (1999) ...................................................................................18

*Saules v. Pacific Eng'g & Const., Ltd.,*
 2010 WL 5334272 (W.D.N.Y. Dec. 20, 2010) ........................................20

*Schmidt v. Martec Indus. Corp.,*
 2009 WL 2883071 (E.D.N.Y. Sept. 3, 2009) ...........................................21

*Shire Canada Inc. v. Mylan Inc., No. 09-CIV 2555(PGG)(KNF),*
 2009 WL 3121103 (S.D.N.Y. Apr. 15, 2009) ...........................................10

*Stein v. Viscarello,*
 2012 WL 2866261 (S.D.N.Y. June 28, 2012) ..........................................21

*Strategem Dev. Corp. v. Heron Int'l N.V.,*
 153 F.R.D. 535 (S.D.N.Y. 1994) ...............................................................17

*Sunward Elec., Inc. v. McDonald,*
 362 F.3d 17 (2d Cir. 2004) .........................................................................13

*Unique Industries Inc. v. Sui & Sons Int'l Trading Corp.,*
 2007 WL 3378256 (S.D.N.Y. Nov. 9, 2007) ............................................19

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,*
 751 F.2d 117 (2d Cir. 1984) ......................................................................11

*Whitaker v. Am. Telecasting, Inc.,*
 261 F.3d 196 (2d Cir. 2001) ........................................................................4

*World-Wide Volkswagen Corp. v. Woodson,*
 444 U.S. 286 (1980) ...........................................................................5, 6, 16

STATUTES

C.P.L.R. § 301 ............................................................................. passim

C.P.L.R. § 302 ........................................................................................4, 5, 13, 14, 15

**OTHER AUTHORITIES**

2 MOORE'S FEDERAL PRACTICE, §12.31[7] (2013) ....................................................18

Matrix Laboratories Limited 2010-2011 Annual Report ...............................................12

Mylan, Inc., "About Us" .................................................................................................10

Mylan, Inc., Active Pharmaceutical Ingredients .......................................................9, 12

Mylan, Inc., Corporate Profile .......................................................................................10

Mylan, Inc., "Fact Sheet" ...............................................................................................20

Mylan, Inc., SUPERPAGES ...............................................................................................10

Mylan Laboratories, Limited, Commercial Products ...........................2, 7, 8, 9, 10, 20

New York Department of State Corporations Division ...................................................10

**PRELIMINARY STATEMENT**

Plaintiff Bristol-Myers Squibb Company ("BMS") filed an amended complaint ("AC") alleging breach of contract against Matrix Laboratories Limited, n/k/a Mylan Laboratories Limited ("Matrix") with this Court on April 15, 2013.  BMS's claim for damages arises out of Matrix's breach of an agreement dated April 17, 2011 ("Agreement") providing for the limited distribution and sale by Matrix of the well-known HIV/AIDS drug atazanavir, sold by BMS under the brand name Reyataz®.[1]

Pursuant to the Agreement, BMS, which owns and holds patents for Reyataz® in the United States and many other jurisdictions, granted Matrix the right to manufacture, distribute and sell generic atazanavir in certain under-developed countries.  (AC ¶ 2.)  The purpose of the Agreement, known as an "immunity from suit" agreement, is to enable a broader distribution of less expensive generic atazanavir to areas where there is a particularly dire need for HIV/AIDS treatment.  (*Id.*)  Under the Agreement, BMS granted Matrix the right to manufacture and sell generic atazanavir in certain "Territories" listed in the Agreement.  (*Id.* at ¶ 3.)  This is a purely charitable endeavor by BMS, as BMS agreed to forgo any royalties or profit associated with Matrix's sale of the product pursuant to the Agreement.  (*Id.*)  BMS also provided Matrix with the manufacturing technology necessary for Matrix to produce the compound on its own.  BMS donated in excess of $300,000 to ensure that Matrix could produce the drug.  (*Id.* at ¶ 4.)

For its part, Matrix promised that it would not sell generic atazanavir for export to areas outside the Territories where BMS had a patent or a patent application for the drug.  (*Id.* at ¶ 28.)  The Agreement included a list of those countries in which BMS had a patent or patent

---

[1] Atazanavir sulfate is a protease inhibitor that is used in combination with other medications to treat HIV infection by blocking the enzyme that is needed for the HIV virus to multiply.  The basic patent for atazanavir was filed in April 1997 by Novartis AG.  BMS manufactures atazanavir under license from Novartis.  BMS also holds patents on atazanavir sulfate.  BMS holds patents or patent applications related to atazanavir in over 50 countries.

application.  (*Id.* at ¶ 29.)  One of the countries on that list is Venezuela.  (*Id.*)  Nevertheless, Matrix sold atazanavir for export to and distribution in Venezuela (*id.* at ¶ 9)—even after BMS had informed Matrix, and Matrix had conceded, that this was a violation of the Agreement (*id.* at ¶¶ 5-11.)  That breach cost BMS in excess of $15,000,000.  (*Id.* at ¶ 4.)

Matrix now argues that it is not subject to personal jurisdiction in this Court and that no breach of the contract has been alleged.  Because each of these arguments is meritless, Matrix's motion to dismiss the Amended Complaint ("Motion") should be denied.

As a procedural matter, BMS has sufficiently alleged jurisdiction over Matrix for two reasons.  First, BMS has alleged that Matrix negotiated and executed the Agreement, which is governed by New York law, with BMS, a New York citizen.  (*See* Agreement, Article 15, AC Ex. 1.)  More generally, Matrix does substantial business in New York and purposefully avails itself of the benefits and protections of the laws of New York.  (AC ¶¶ 19-22; Mot. at 4.)  The continuous and systematic contacts with this jurisdiction include the selling and shipping of pharmaceutical products in New York and deriving revenue from these sales.  (*Id.*)  Matrix's own publications promote the fact that Matrix sells generic products throughout the United States, including New York.[2]  (*See* Mylan, Inc. Press Release, AC Ex. 3; Mylan Laboratories Limited, Commercial Products, *available at* http://www.mylan.com/our_businesses/ active_pharmaceutical_ingredients (select "therapeutic segments" hyperlink) (last visited June 10, 2013) (attached as Ex. 1).)[3]

Second, upon information and belief, Matrix is a mere department of its parent corporation, Mylan, Inc. ("Mylan").  Mylan shares at least one director with Matrix and owns a

---

[2] Matrix admits in its Motion that it and Mylan Pharmaceuticals Inc. share the same parent company.  (Mot. at 4, n.3.)  This is significant because, without the entire corporate family, Mylan could  not function or sell products in the United States.
[3] All exhibits attached to this memorandum of law are attachments to the Lisa R. Plush Declaration.

majority of Matrix's shares.  (AC ¶ 23.)  Matrix is financially dependant on Mylan, and Mylan controls Matrix by directing its marketing efforts.  Under the totality of circumstances, Mylan exercises substantial control over Matrix.  There is no dispute that Mylan—which is registered with New York Department of State's Corporations Division, has a registered agent in New York, maintains a business address in New York, trades on the NASDAQ, and sells a large volume of generic drugs in the state—is subject to personal jurisdiction in New York.  Because Matrix is simply an outsourced operating department of Mylan, it too is subject to personal jurisdiction here.

In the alternative, if the Court is inclined to decline personal jurisdiction on the current pleadings, BMS requests limited jurisdictional discovery so that it may respond to Defendant's Motion in greater detail.  Jurisdictional discovery is appropriate in this case, for example, so that BMS can cross-examine Rajeev Mukundan, General Counsel and Chief Compliance Officer at Matrix, who submitted a declaration in support of the Motion, as well as to allow BMS to investigate the factual claims made in the various affidavits and the Motion submitted by Matrix. Matrix controls many of the relevant facts, and BMS should be allowed limited discovery to determine if Matrix is subject to personal jurisdiction in New York for this breach of contract action involving a contract governed by New York law.

The Court also should deny Matrix's Motion to dismiss for failure to state a claim.  BMS plainly has alleged a viable claim for breach of the Agreement.  To adequately allege breach of contract, BMS must show:   (1) a valid and enforceable contract; (2) plaintiff's adequate contractual performance; (3) defendant's breach of the agreement; and (4) damages.  Matrix contests only the third element, arguing that Matrix has not alleged a breach of the Agreement. But the interpretation of the Agreement on which this contention rests is mistaken.   The

Agreement was executed for the purpose of providing HIV/AIDS drugs to specific Territories listed in the Agreement but explicitly prohibits sales outside the defined territories in countries where BMS holds a patent or *where a patent is pending*. Matrix does not dispute that it sold atazanavir to the Pan-American Health Organization ("PAHO") for distribution in Venezuela, a country where BMS has patent applications pending. (AC ¶ 9.) That was an obvious breach of the Agreement. Indeed, BMS informed Matrix that it considered this to be a violation of the Agreement and Matrix pledged to recall the product (it did not). (AC ¶ 11.)[4]

For these reasons, and for those set forth below, Matrix's Motion should be denied in its entirety. In the alternative, the Court should (1) allow limited jurisdictional discovery of Matrix and (2) hold any decision on the Motion in abeyance until such discovery is completed.

## ARGUMENT

I.  **Matrix's Motion to Dismiss the Complaint For Lack of Personal Jurisdiction Should Be Denied.**

    A.  *Relevant Standard.*

In a diversity case, a federal court may exercise personal jurisdiction over a foreign party in accordance with the law of the forum state and subject to constitutional due process requirements. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001); *Palmieri v. Estefan*, 793 F. Supp. 1182, 1186 (S.D.N.Y. 1992). Where a non-resident defendant challenges a New York court's jurisdiction, the plaintiff has the burden to prove by a preponderance of the evidence that jurisdiction is authorized by either C.P.L.R. § 301 or § 302, and that the exercise of jurisdiction does not offend constitutional due process requirements. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006); *Gundlach v. Int'l Bus.*

---

[4] In its Motion, Matrix admits that it initiated steps to prevent distribution of atazanavir in Venezuela. (Mot. at 7.) However, these efforts were not successful and, in violation of the Agreement, atazanavir was sold in Venezuela.

*Mach. Corp.*, No. 11-CV-846, 2012 WL 1520919 at *8, (S.D.N.Y. 2012).  In a pre-trial motion to dismiss, courts consider such evidence in the light most favorable to the plaintiff in determining whether there is sufficient evidence to support a finding of jurisdiction over the non-domiciliary defendant.  *See A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993); *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (highlighting that a court must liberally construe, and assume the truth of, the plaintiff's factual allegations).

Under New York C.P.L.R. § 301, a foreign corporation is subject to general jurisdiction if it has engaged in such a continuous and systematic course of "doing business" in New York that it is effectively "present" in the state.  *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 51 (S.D.N.Y. 1999).  New York's long-arm statute, C.P.L.R. § 302, provides a basis for finding specific jurisdiction over a non-domiciliary where the non-domiciliary transacts any business within the state, and the cause of action arises from that transaction.  *See* C.P.L.R. § 302(a)(1); *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 465 (2d Cir. 2008); *ESI, Inc.*, 61 F. Supp. 2d at 57 (noting that the "transacted business" standard under § 302 is "considerably less onerous than that required for a finding that the defendant was 'doing business' under § 301.").

The exercise of jurisdiction under either statute must comport with constitutional due process principles.  To satisfy the due process standard originally articulated in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the plaintiff must show that the defendant has certain minimum contacts in the desired forum, and that maintaining the suit does not "offend traditional notions of fair play and substantial justice."  *Id.* at 316 (internal citation omitted.) More specifically, the plaintiff must allege that the defendant has engaged in purposeful activity directed towards the forum and therefore can reasonably anticipate being sued there.  *See World-*

5

*Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-97 (1980); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-78 (1985).

In the instant case, BMS alleges facts sufficient to show that Matrix:  (1) sold product directly to a New York customer; (2) directed its pharmaceutical business toward New York; (3) negotiated and executed the contract that is the subject of this lawsuit under New York law with a New York citizen; and (4) is a mere operating department of a U.S. firm with unquestionable ties to New York.  Because Matrix availed itself of the benefits of doing business in New York, it should reasonably anticipate being haled into court here.  This court should therefore find that Defendant is subject to personal jurisdiction in New York.

      B.     *Matrix is Subject to Personal Jurisdiction.*

           1.    <u>Matrix is Subject to General Jurisdiction</u>.

Under New York C.P.L.R. § 301, New York courts may exercise personal jurisdiction over a foreign corporation that has engaged in such a continuous and systematic course of "doing business" in New York that a finding of "presence" is warranted.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); *Jazini*, 148 F.3d at 134 (interpreting C.P.L.R. § 301); *ESI, Inc.*, 61 F. Supp. at 51; *Arquest Inc. v. Kimberly-Clark Worldwide, Inc.*, No. 07-CV-11202, 2008 WL 2971775, at *5 (S.D.N.Y. July 31, 2008) (noting that "continuous and systematic business activities within New York" effectively amounts to doing business "with a fair measure of permanence and continuity.") (internal citations omitted.)

Matrix has been "doing business" in New York for purposes of § 301 because Matrix has manufactured, distributed, and earned substantial revenue from products sold in New York. According to Mylan's press release, Matrix's manufacture and sale of certain active pharmaceutical ingredients ("APIs") has resulted in the widespread production of popular prescription drugs throughout the United States, including (amongst many others) the generic

version of Lipitor.  (*See* Mylan, Inc. Press Release, AC Ex. 3; Mylan Laboratories Limited, Commercial Products (Ex. 1).)[5]

Matrix emphasizes that "a defendant's sale of goods into the 'stream of commerce' is not in itself sufficient to justify the exercise of jurisdiction in a state where the goods are sold …. [I]nstead, due process requires that the defendant … purposefully avail itself of the privilege of conducting activities within the forum State," by, for example, specifically targeting the state's market.  (Mot. at 15) (summarizing the Supreme Court's analysis in *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2786-87 (2011).)  But Matrix ***has*** availed itself of the privilege of conducting activities in New York.  In 2012, for example, Matrix admits that it sold pharmaceutical products directly to a New York customer and to a New Jersey customer with a New York address.  (Mot. at 4.)  In the instant case, Matrix accepted charitable assistance from BMS, a New York citizen, in order to produce atazanavir.  (AC ¶ 4.)  This assistance consisted of regular communications between the companies to assist Matrix in setting up its manufacturing process.  In addition, though Matrix alleges that it is primarily an Indian company and "does not solicit business in New York, nor does [it] 'target' the New York market" (Mot. at 11), Matrix acknowledged its targeted marketing efforts and successful API sales in the U.S. market in Mylan's Form 10-K for 2011:

> At Mylan Laboratories Limited, our finished dosage business primarily produced ARV products, which are sold mostly outside of India, and other FDF products, which are sold to third parties by other Mylan operations around the world. … We currently have

---

[5] In its Motion, Matrix creates the false impression that it has no connection to the sale of generic Lipitor into the state of New York.  (Mot. at 13.)  Matrix's argument focuses on form over substance:  though Matrix does not physically sell the final-dose form ("FDF") of generic Lipitor into New York, it manufacturers the essential ingredient, or API.  In this case, the API is the Atorvastatin Calcium that makes this cholesterol drug particularly effective.  The fact that another division of Mylan completes the FDF and distributes the product in New York does not undo the fact that Matrix's product was targeted for New York and other U.S. jurisdictions.

> more than 250 APIs in the market or under development, and we
> focus our marketing efforts on regulated markets such as the U.S.
> and the European Union.

(Mylan, Inc., Form 10K, AC Ex. 2, at 8.)  Clearly, Matrix is soliciting business in the United States, and New York is one of the largest parts of this market.  (*See* Mylan Laboratories Limited, Commercial Products (Ex. 1).)

Matrix argues that, under *Goodyear*, the injection of its goods into the "stream of commerce" through an affiliated U.S. entity is insufficient to assert general jurisdiction over Matrix.  (Mot. at 15.)  In *Goodyear*, Plaintiffs in North Carolina sued a corporation that manufactured and sold tires abroad for a bus accident that occurred in France.  Because some of the tires reached North Carolina through the "stream of commerce," argued Plaintiffs, North Carolina had general jurisdiction to hear the claim.  In holding that North Carolina did not have general jurisdiction, the Supreme Court emphasized the absence of a meaningful connection between North Carolina and the foreign affiliate tire manufacturers.  *See Goodyear*, 131 S.Ct. at 2851.  Unlike the attenuated connection between manufacturer and forum state in *Goodyear*, Matrix has sold at least one API directly into New York, has an ongoing relationship with a New York citizen in order to effect the terms of the Agreement, and manufactured the essential component part of many other drugs that are sold throughout the state.

Moreover, the tires at issue in *Goodyear* "differ[ed] in size and construction from tires ordinarily sold in the United States.  They are designed to carry significantly heavier loads, and to serve under road conditions and speed limits in the manufacturers' primary markets."  *Goodyear*, 131 S.Ct. at 2852.  By contrast, the APIs manufactured by Matrix serve as the key ingredients for drugs that are targeted to consumers in New York.  These products do not "find their way" to New York, they are intended by Matrix to be sold here.  Matrix designs and

8

manufactures its APIs with the knowledge and intent that Mylan will package and market the resulting generic drug in New York and throughout the United States.  (*See* Mylan, Inc., Active Pharmaceutical Ingredients, *available at* http://www.mylan.com/our_businesses/ active_pharmaceutical_ingredients (last visited June 10, 2013) (attached as Ex. 2), describing the Matrix-Mylan relationship as a "comprehensive, vertically integrated supply chain"); (*see also* Mylan Laboratories Limited, Commercial Products (Ex. 1).)[6]

General jurisdiction is proper in the instant case because BMS has alleged facts sufficient to support a finding that, as a major pharmaceutical supplier, both directly and indirectly, Matrix has a substantial and continuous affiliation with New York.[7]

2.   Matrix is a Mere Department of Mylan.

Under C.P.L.R. § 301, general jurisdiction may also be authorized where the foreign subsidiary is a "mere department" of a domestic parent doing business in New York and subject to jurisdiction there.  *DCA Food Indus. Inc. v. Hawthorn Mellody, Inc.*, 470 F. Supp. 574, 583, n.4 (S.D.N.Y. 1979); (citing *Freeman v. Gordon & Breach, Science Publishers, Inc.*, 398 F. Supp. 519, 521-22 (S.D.N.Y. 1975) (holding out-of-state subsidiary was subject to personal jurisdiction in New York because it was effectively "doing business in [the] State" due to its relationship with the domestic parent corporation)); *see also ESI, Inc.*, 61 F. Supp. 2d at 51 (explaining that "when a plaintiff seeks to assert personal jurisdiction over a foreign subsidiary

---

[6] Matrix complies with the FDA requirements (*see* Mylan, Inc., Press Release, AC Ex. 3), thus demonstrating an intent to distribute its products in the U.S. market.  Matrix admits as much on their website.   (*See* Mylan, Inc., Active Pharmaceutical Ingredients, *available at* http://mylanlabs.in/our_businesses/active_pharmaceutical_ingredients (last visited June 10, 2013) (Ex. 2).)

[7] It is important to note that the United States Supreme Court granted certiorari in *DaimlerChrylsler AG v. Bauman*, No. 11-965, to address whether due process allows a court to exercise general personal jurisdiction over a foreign corporation based solely on the fact that the defendant's indirect corporate subsidiary performs services in the forum state.

based upon the presence of its parent," the plaintiff must show that the parent exerts substantial control over the subsidiary).

As a threshold matter, Matrix's parent corporation, Mylan, unquestionably is subject to jurisdiction in New York.   Mylan is registered with New York Department of State's Corporations Division, has a registered agent in New York (New York Department of State, Divisions of Corporations, http://www.dos.ny.gov/corps/bus_entity_search.html (search "Mylan" for entity Name; then select "Mylan, Inc." hyperlink) (last visited June 10, 2013) (attached as Ex. 3)), maintains a business address in New York City (Mylan, Inc. on SUPERPAGES, www.superpages.com/bp/New-York-NY/Mylan-Inc-L2072563126.htm (last visited June 10, 2013) (attached as Ex. 4)), states that one of its "significant properties" to conduct business is located in New York (Mylan, Inc. Form 10K, AC Ex. 2 at 47), trades on the NASDAQ (*See* Mylan, Inc., Corporate Profile, *available at* http://www.mylan.com/about_us/corporate_profile (last visited June 10, 2013) (attached as Ex. 5)), and sells a large volume of generic drugs in the state, as well as throughout the United States.   (*See* Mylan Laboratories Limited, Commercial Products (Ex. 1); Mylan, Inc., "About Us," www.mylan.com/about_us (last visited June 10, 2013) (attached as Ex. 6); Mylan, Inc., Form 10K, AC Ex. 2).)   In fact, Mylan has previously consented to jurisdiction in New York.  *See, e.g.*, *Shire Canada Inc. v. Mylan Inc., No. 09-CIV 2555(PGG)(KNF)*, 2009 WL 3121103, Defendants' Answer to the Amended Complaint at 2 (S.D.N.Y. Apr. 15, 2009), *High River Ltd. P'ship v. Mylan Labs, Inc.*, 353 F. Supp. 2d 487, 497-98 (M.D.Pa. 2005) (justifying New York's exercise of jurisdiction where Mylan, Inc. consented to transferring the action to S.D.N.Y. and explained that it would be "more convenient for the parties" to move the case to New York).[8]

---

[8] Mylan's consent to jurisdiction in an unrelated case is not sufficient alone to confer jurisdiction here.  *See Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991).  It is a relevant

To allege that a foreign subsidiary is a "mere department" of a corporation doing business in New York, the plaintiff must first show facts that demonstrate common ownership.[9]  *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984). Next, courts determine whether the parent exerts "substantial control" over the subsidiary, considering three factors:  (1) the financial dependency of the subsidiary on the parent; (2) the degree to which the parent interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities; and (3) the parent's degree of control over the marketing and operational policies of the subsidiary.  *See, e.g.*, *Beech Aircraft*, 751 F.2d at 120-122; *Jazini*, 148 F.3d at 184-85 (noting that, while each factor is important, only "common ownership" is essential); *Dorfman v. Marriott Intern. Hotels, Inc.*, No. 99-CV-10496, 2002 WL 14363, at *2 (S.D.N.Y. Jan. 3, 2002).  Here, Matrix is a mere department of Mylan because Mylan holds approximately 98% ownership of Matrix and exerts substantial control over Matrix's financial viability, executive personnel, and U.S. marketing efforts.

First, Mylan holds approximately 98% ownership of Matrix (Mylan, Inc., Form 10K, AC Ex. 2 at 3) and shares at least one director in common with Matrix.  (*See* Mylan India, Leaders, AC Ex. 4.)  These facts plainly satisfy the "common ownership" requirement.

Further, BMS has alleged that Matrix is financially dependent on Mylan because Matrix's overall financial viability is tied to the success of Mylan.  Specifically, Mylan provides the demand for its Indian subsidiary to "manufacture and supply low cost, and high quality API

---

factor, however, along with the facts establishing it presence in the state identified above.  Matrix has also consented to jurisdiction in the United States.  *See Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*, No. 109CV00651, 2010 WL 976379 (D. Del. Feb. 9, 2010).

[9] Common ownership is almost always established with the existence of a parent-subsidiary relationship, where both corporations exist as part of a united endeavor.  *Freeman v. Gordon & Breach, Science Publishers, Inc.*, 398 F. Supp. 519, 522 (S.D.N.Y. 1975) (noting that courts frequently draw an inference of substantial control where a subsidiary is engaged in a common enterprise with its parent corporation).

for [Mylan's] own products and pipeline," and presumably guarantees the short-term borrowings held by Matrix in the amount of $128.1 million (Mylan Inc., Form 10K, AC Ex. 2 at 3, 64.) Mylan even admits that "[t]hrough Matrix, Mylan has direct access to one of the world's largest ingredients (API) manufacturers.  The relationship makes Mylan one of only two global generics companies with a comprehensive vertically integrated supply chain."  (Mylan, Inc., Active Pharmaceutical Ingredients (Ex. 2).)

Second, BMS has alleged that Mylan granted Matrix executive employees stock options in Mylan.  (AC ¶ 23; *see* Matrix Laboratories Limited, 2010-2011 Annual Report, p. 43 (attached as Ex. 7).)  That Mylan considered stock in the parent corporation a strong incentive and form of compensation for Matrix employees is further evidence that Mylan is the ultimate entity in control of the global enterprise.

Third, Mylan's control over the marketing and operational policies of Matrix also weighs in favor of a finding that Mylan exerted substantial control over Matrix.  (Mylan Inc., Form 10K, AC Ex. 2 at 3.)  As a function of its managerial relationship, Mylan controls the marketing of the low-cost, key pharmaceutical ingredients Matrix produces in India.  *Id.*  In this case, Mylan markets the finished dosage form of the valuable anti-retroviral product that Matrix manufactures.  *Id.*  Taken together, all three factors courts consider in assessing a parent's substantial control over a subsidiary support a finding that Mylan, a corporation doing business in New York, substantially controls Matrix.

Matrix's Motion contends that each of these factors alone is insufficient to establish general jurisdiction.  But *taken together*, the evidence of common ownership, a shared director, stock options granted to Matrix by Mylan, financial interdependence between the two

companies, and Mylan's marketing control of Matrix's products shows that Matrix is simply an outsourced operational department of Mylan, a pharmaceutical giant present in New York.

3.      Matrix is Subject to Specific Jurisdiction.

Matrix also is subject to specific jurisdiction under New York's long-arm statute, C.P.L.R. § 302, because Matrix breached a contract with a New York choice of law provision that it entered into with a New York citizen.  C.P.L.R. § 302(a)(1) permits a party to assert jurisdiction over a non-domiciliary party if  (1) the non-domiciliary "transacts any business within the state" and (2) the "cause of action aris[es] from" those business contacts.  *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 465 (2d Cir. 2008) (quoting N.Y. C.P.L.R. §302(a)(1)); *see also Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004). The "transacting business" element is fulfilled where a defendant purposefully availed itself of the privilege of conducting business in New York, "thereby invok[ing] the benefits and protections of its laws." *Energy Brands*, 571 F. Supp. 2d at 466 (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999); *see also Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) (citing *Parke-Bernet Galleries, Inc. v. Franklyn*, 256 N.E.2d 506 (1970) to explain that section 302 requires "but one transaction – albeit a purposeful transaction – to confer jurisdiction in New York.").  The "arising out of" element is fulfilled when there is a "substantial nexus" between the transaction and the claim, such that "even a single, purposeful action directed at New York will be sufficient to confer personal jurisdiction over a defendant not physically present in New York." *Energy Brands*, 571 F. Supp. 2d at 466; *see also Goodyear* 131 S. Ct. at 2851 (clarifying that specific jurisdiction depends on an affiliation between the forum state and the controversy at issue in order to subject the foreign company to the forum state's regulation).

13

Notably, the Court of Appeals has interpreted 302(a)(1)'s "transacted business" standard to require a less onerous showing than the "doing business" standard under C.P.L.R. § 301.  *See ESI Inc.*, 61 F. Supp. 2d at 57 (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985); *Deutsche Bank Secs., Inc. v. Montana Bd. of Inv.*, 7 N.Y.3d 65, 71 (2006), *certiorari denied*, 549 U.S. 1095 (interpreting § 302 to hold that one business action from which the cause of action arises can be sufficient for jurisdictional purposes).  In this case, Matrix is subject to specific jurisdiction under New York's long-arm statute because Matrix (1) purposefully entered into a contract with a New York citizen; (2) knowingly agreed to a New York choice of law provision; (3) sought—and was denied—permission to breach the contract through communications with BMS's general counsel in New York; and (4) breached the contract, causing loss of profits in New York.  BMS now sues to recover damages arising from Matrix's breach, and Matrix should be held liable in a New York court.

a.   *Matrix Transacted Business in New York.*

To determine whether a party has "transacted business" within the meaning of § 302(a), courts consider the following factors under the *totality of circumstances*:  "(1) whether the defendant has an ongoing contractual relationship with a New York corporation; (2) whether the contract was negotiated or executed in New York; (3) whether the contract contains a New York choice-of-law, forum-selection or consent to jurisdiction clause; and (4) whether the contract requires notices or payments to be sent to New York or requires supervision by the corporation in New York."  *ESI, Inc.*, 61 F. Supp. 2d at 57; *see also Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996) (setting out the factors and noting that though all are relevant, "no one factor is dispositive.").

Here, Matrix has transacted business in New York because (1) Matrix has an ongoing contractual relationship under the Agreement with BMS, a New York citizen (*see, e.g.*, Agreement, Article 8.1(a), AC Ex. 1); (2) the Agreement contains a New York choice-of-law clause (*See id.* at Article 15) ("The governing law of the Agreement shall be the law of the State of New York, U.S.A., which shall operate without regard to the conflicts of law principles thereof."); and (3) Matrix's correspondence under the Agreement—correspondence directly related to the breach that is the issue of this lawsuit—was conducted with BMS contacts in New York (*see* AC ¶¶ 10-11). In assessing the totality of circumstances, Matrix's actions—entering into a contract governed by New York law with a New York citizen and engaging in communications with that corporation in New York leading to the breach of the contract— support a finding that Matrix was "transacting business" in New York.

Instead of weighing the totality of the circumstances, Matrix argues only that the Agreement's New York choice of law provision and the fact that BMS is a New York corporation are each, on their own, insufficient to prove that Matrix "transacted of business" in New York. (Mot. at 20.) Even if that were so, it would be irrelevant because the Section 302(a)(1) analysis considers these factors together. *See Agency Rent A Car Syst.*, 98 F.3d at 29. In the instant case, the majority of the factors weigh in favor of a finding that Matrix "transacted business" under § 302(a)(1) as a result of the Agreement with BMS.

        b. *This Action Arises from Matrix "Transacting Business" in New York.*

The "arising from" prong of § 302(a)(1) is fulfilled when there is a substantial connection between the business transacted in New York and the claim at issue. *See Goodyear* 131 S. Ct. at 2851 (clarifying that specific jurisdiction depends on an affiliation between the forum state and the controversy at issue in order to subject the foreign company to the forum state's regulation).

Even one stand-alone transaction purposefully directed at New York is sufficient to confer personal jurisdiction over a foreign defendant like Matrix. *Energy Brands*, 571 F. Supp. 2d at 466. Here, the business transacted in New York is the Agreement, and the claim at issue is the breach of the Agreement. Indeed, Matrix accepted donations from BMS and continuously worked with BMS under this Agreement to produce atazanavir. Accordingly, a finding of specific jurisdiction is proper. Notably, Matrix does not dispute that, if the Agreement constitutes "transacting business" in New York, then this lawsuit, arising out of the breach of the Agreement, satisfies the "arising from" prong of the long-arm statute. (*See* Mot. at 19-21.)

    4.     A Finding of Personal Jurisdiction Does Not Violate Constitutional Due Process.

Subjecting Matrix to personal jurisdiction does not violate the Due Process clause of the Constitution. A state's authority to assert jurisdiction over a foreign defendant is subject to the Due Process Clause of the Fourteenth Amendment. Thus, a defendant must have minimum contact with the state and the suit must not "offend traditional notions of fair play and substantial justice." *See Goodyear*, 131 S.Ct. at 2853 (citing *Int'l Shoe Co.*, 326 U.S. at 316). In addition to showing the existence of minimum contacts, the plaintiff must show that the defendant has engaged in purposeful activity directed towards the forum and can therefore reasonably anticipate being sued there. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-97 (1980); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-78 (1985).

A finding that Matrix is subject to jurisdiction comports with constitutional due process. As described more fully above, Matrix has sufficient contacts with New York such that it should reasonably anticipate being sued in New York. Matrix has engaged in purposeful activity by signing a contract subject to New York law with a New York citizen and by selling its products

16

in New York.  All of these actions should make Matrix aware of the possibility that it would be haled into court in New York.

## II.  In The Alternative, Jurisdictional Discovery From Matrix Is Warranted.

### A.  *Relevant Standard.*

Although BMS believes that it has alleged a *prima facie* showing of personal jurisdiction over Matrix, if this Court is inclined to grant Matrix's Motion, BMS should be given the opportunity to conduct jurisdictional discovery.  Jurisdictional discovery is appropriate "where pertinent facts bearing on the question of jurisdiction are controverted … or where a more satisfactory showing of the facts is necessary." *Pension Comm. Of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, No. 05 Civ. 9016 (SAS), 2006 WL 708470, at *6 (S.D.N.Y. Mar. 20, 2006) (denying motion to dismiss and granting limited jurisdictional discovery) (internal quotations and citations omitted); *Hollenbeck v. Comeq, Inc.*, No. 5:03-CV-0825, 2007 WL 2484299, at *6 (N.D.N.Y. Aug. 28, 2007) (denying motion to dismiss for lack of personal jurisdiction pending further discovery of foreign defendants' relationship to New York) (internal quotations and citations omitted.)  Courts "should take care to 'give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction.'" *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (internal citations omitted.)

This Court has discretion to order jurisdictional discovery, even without a *prima facie* showing of personal jurisdiction, if a plaintiff provides a "sufficient start" toward demonstrating jurisdiction and has shown a reasonable basis for the Court to assume jurisdiction. *Allojet PLC v. Vantage Assocs.*, No. 04-CV-5223, 2005 WL 612848, at *7 (S.D.N.Y. Mar. 15, 2005) (ruling that plaintiff made a sufficient start toward alleging general jurisdiction and permitting discovery of facts that relate to general jurisdiction); *see, e.g., Strategem Dev. Corp. v. Heron Int'l N.V.*, 153 F.R.D. 535, 547-48 (S.D.N.Y. 1994) (allowing jurisdictional discovery when plaintiff made

a sufficient start toward alleging *prima facie* personal jurisdiction); *BHP Trading (UK) Ltd. v. Deep Sea Int'l Shipping Co.*, No. 90 CV. 2231, 1991 WL 198747, at *5 (S.D.N.Y. Sept. 23, 1991) ("To be permitted [jurisdictional] discovery plaintiff need not have made a prima facie showing, but at the very least must have made a sufficient start and shown its position to be non-frivolous.") (citations omitted); *Halas v. Dick's Sporting Goods*, 105 A.D.3d 1411, *2 (4th Dep't 2013) (granting jurisdictional discovery to determine whether defendant derived substantial revenue from sale of treestand); *see also* 2 MOORE'S FEDERAL PRACTICE, §12.31[7] (2013) ("[g]enerally, the district court should allow discovery if the jurisdictional claim has a reasonable basis and it appears that pertinent facts may be uncovered."). If the Court orders jurisdictional discovery, then determination of the legal issues raised in a motion to dismiss should be postponed until the Court rules on all pending jurisdictional questions. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).

B.   *Jurisdictional Discovery Is Appropriate To Develop A Full Record On Personal Jurisdiction.*

In its motion, Matrix has made numerous factual allegations that BMS cannot confirm or challenge without limited discovery from Matrix. BMS seeks jurisdictional discovery to (1) demonstrate Matrix's business relationships with New York; (2) show Matrix is a mere department of its parent, Mylan; and (3) cross-examine Mr. Rajeev Mukudan, Matrix's General Counsel and Chief Compliance Officer, who submitted a declaration in support of Matrix's Motion.

First, Matrix alleges in its Motion that it is not licensed to operate in New York and does not do so, has no offices, factories, real property or employees in New York, and none of the equipment or chemicals for its products are purchased in New York. (Mot. at 3-4.) Matrix also

claims that it does not solicit business in New York.  (*Id.* at 4.)  However, discovery is needed to

test these allegations.  Matrix's own website states that it is

> one of the world's largest manufacturers and suppliers of active pharmaceutical ingredients for a wide range of therapeutic categories, including antibacterials, central nervous system agents, antihistamine/anti-asthmatics, cardiovasculars, antivirals, antidiabetics, antifungals, proton pump inhibitors and pain management drugs. Since 2007, Mylan Labs has been addressing unmet needs in the area of HIV/AIDS and has grown to be a leading manufacturer and supplier of high quality, innovative and affordable generic antiretroviral products.
>
> Mylan Labs manufactures a number of high quality finished dosage generic pharmaceutical products for various regulated markets in the world including the U.S., Europe, Australia and Canada.

(Mylan India, Our Businesses, AC Ex. 4.)  In fact, Mylan announced approval for a generic

version of Lipitor in May 2012.  (Mylan, Inc. Press Release, AC Ex. 3.)  The press release notes

that it was Matrix that received approval from the U.S. Food and Drug Administration for its

Abbreviated New Drug Application for generic Lipitor.  Discovery is needed to determine the

amount of sales of this product (as well as others) in New York.  *See Iovate Health Sci., Inc. v.*

*Masuda*, No. 08-CV-809A, 2009 WL 2878526, at *3 (W.D.N.Y. Sept. 2, 2009) (ruling that

discovery is warranted over the volume of sales of the defendants' products generally in New

York).

Matrix also alleges that its sales to New York represent only a small percentage of its

total sales, but discovery is needed both to corroborate that allegation and to discover the dollar

value of Matrix's sales in New York.  In *Unique Industries Inc. v. Sui & Sons International*

*Trading Corp.*, the Southern District of New York found that jurisdictional discovery is justified

by a single transaction.  No. 05-CV-2744, 2007 WL 3378256, at *7 (S.D.N.Y. Nov. 9, 2007).

Matrix's conceded sales in New York plainly are sufficient to justify jurisdictional discovery.

*See also, e.g.*, *Exclaim Assocs. Ltd. v. Nygate*, 10 Misc. 3d 1063(A), \*4 (N.Y. Sup. Ct. 2005) (ruling that because the record is insufficient to resolve whether personal jurisdiction exists, "[d]iscovery proceedings on the issue of jurisdiction are thus authorized and necessary."). Moreover, even if those sales represent only a small percent of Matrix's world-wide sales, they may be "significant" for purposes of establishing personal jurisdiction.  *See, e.g., Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d at 166 (explaining that New York's long-arm statute requires only one purposeful transaction directed at New York to confer jurisdiction there). Again, there is no way to know the relevant facts without discovery.

Second, limited discovery is necessary to show that Matrix is a mere department of its ultimate parent company, Mylan.  *See Saules v. Pacific Eng'g & Const., Ltd.*, No. 08CV676S, 2010 WL 5334272, at \*6 (W.D.N.Y. Dec. 20, 2010) (allowing jurisdictional discovery to determine relationship between foreign and domestic defendants).  As discussed above, Mylan's contacts with New York are plentiful and undisputed.  Mylan sells a large volume of generic drugs throughout the United States, including in New York.  (*See* Mylan Laboratories Limited, Commercial Products (Ex. 1); *see also* Mylan, Inc., Fact Sheet, www.mylan.com (enter "Mylan Fact Sheet" in search bar; select first PDF hyperlink entitled, "Fact Sheet") (last accessed June 10, 2013) ("One out of every 11 prescriptions dispensed in the U.S. – brand name or generic – is a Mylan product") (attached as Ex. 8).)  Mylan also has a New York address, a registered agent in New York and is listed on the NASDAQ.  (*See supra* p. 10.)  Matrix shares at least one director in common with Mylan.  (Mylan India, Leaders, AC Ex. 4.)  Mylan owns 98% of Matrix.  (Mylan, Inc., Form 10K, AC Ex. 2.)  And, upon information and belief, Mylan exercises substantial control over the operations of Matrix.  (AC ¶ 24.)  If these allegations and facts are insufficient, further details about the relationship between these entities are exclusively in the

control of Matrix and its parent.  Discovery is necessary to flesh out these facts, so that the Court can determine if Matrix is a mere department of Mylan and thus is subject to personal jurisdiction as a result of its parent's undisputed contacts in this jurisdiction.

Finally, Matrix's Motion relies heavily on a declaration from Rajeev Mukundan, General Counsel and Chief Compliance Officer at Matrix.[10]  This declaration contains many factual averments related to jurisdiction.  BMS has not had an opportunity to cross-examine Mr. Mukundan or to explore Matrix's other connections with New York with Mr. Mukundan.  BMS should be given the opportunity to question Mr. Mukundan to be able to fully and adequately respond to Matrix's Motion.

At a minimum, BMS has made a "sufficient start" to pleading personal jurisdiction and raised a genuine issue of jurisdictional fact that warrants limited discovery.  *See Schmidt v. Martec Indus. Corp.*, No. 07-5020, 2009 WL 2883071, at *5 (E.D.N.Y. Sept. 3, 2009) (ruling Plaintiff raised a genuine issue of jurisdictional fact).

### III.   Matrix's Motion To Dismiss the Complaint For Failure To State A Claim Should Be Denied.

BMS's complaint alleges facts sufficient to support a valid breach of contract claim.  To state a viable breach of contract claim in New York, a plaintiff must allege: (1) the existence of an enforceable agreement; (2) the plaintiff's adequate contractual performance; (3) the defendant's breach of the agreement; and (4) damages.  *Broughel v. Battery Conservancy*, 07-CV-7755, 2010 WL 1028171, at *5 (S.D.N.Y. Mar. 16, 2010) (citing *Advanced Mktg. Grp., Inc. v. Business Payment Sys.*, 300 Fed. App. 48, 49 (2d Cir. 2008); *see also Mandarin Trading Ltd.*

---

[10] Defendant cites *Stein v. Viscarello*, No. 11 CV 8304(VB), 2012 WL 2866261 (S.D.N.Y. June 28, 2012) for the proposition that a court may consider declarations submitted by the party contesting jurisdiction.  (Mot. at 3, n.1.)  Yet, this case does not support Matrix's position.  In fact, the case plainly states that "Plaintiff can make [the jurisdictional showing] through its own affidavits and supporting materials . . ." *Stein*, 2012 WL 2866261 at *2.  The case never states that the court will consider declarations submitted by the party contesting jurisdiction.

*v. Wildenstein*, 16 N.Y.3d 173, 174 (2011) (plaintiff must allege the essential terms of the parties' contract, including the specific provision upon which liability is predicated).  In this case, BMS has adequately alleged each of these elements.

Matrix does not dispute that the Agreement is enforceable.  BMS has adequately performed under the contract and Matrix, again, does not dispute this point.  And BMS has alleged that Matrix's sale of atazanavir for distribution in Venezuela caused BMS to incur lost profits on sales to Venezuela; a loss that BMS estimates exceed $15 million.  (*Id.* at ¶ 36.)

Thus, the only question for present purposes is whether BMS adequately has pleaded that Matrix's sale of atazanavir for distribution in Venezuela violated the Agreement.  It has.  Matrix concedes that Section 3.1(d) of the Agreement "arguably constrains [its] conduct with respect to distribution" (Mot. at 23), but offers an interpretation of Section 3.1(d) that permits the sales at issue here.  That interpretation is mistaken in two ways.  First, Matrix implies that Section 3.1(d) only prohibits sales to an entity within the Territory that then exports the Product outside the Territory.  (Mot. at 23.)  Not so.  The provision prohibits any sale in which the purchaser "may export the Products outside the Territory where Patents exist." (AC ¶ 28.)  As Matrix's product originates in India, sales that result in the distribution of the product in Venezuela plainly involve export of the product outside the Territory.  The only question, then, is whether Venezuela is an area "where Patents exist" under the Agreement.  Matrix contends that it is not because BMS's patents in Venezuela have not been approved (and, it suggests, will not be approved).  (Mot. at 24.)  On the contrary, the Agreement defines "Patents" to mean "the patents ***and patent applications described in Appendix A***, and all patents issuing from such patent applications as well as all divisional and extensions thereof."  (AC ¶ 29 (emphasis added); *see also* AC ¶ 13.)  And, as Matrix concedes (Mot. at 24), Venezuela is specifically listed in Appendix A of the

Agreement as a country where BMS has a patent pending for atazanavir.  By the express and unambiguous terms of the Agreement, Venezuela is an area "where Patents exist."  Yet, Matrix sold at least a year's worth of atazanavir to the PAHO for distribution in Venezuela.  (*Id.* at ¶ 33.)  Unsurprisingly, Matrix has acknowledged that its behavior was contrary to the Agreement in numerous written communications in 2011 and 2012.  (*Id*. at ¶¶ 5-8.)

Even if there were some doubt about the correct interpretation of the Agreement—and there is not—there would be, at least, a genuine issue of material fact created by the parties' conflicting interpretations of the Agreement.[11]  Matrix's own behavior, in requesting permission to sell atazanavir in Venezuela (AC ¶ 5), clearly shows that Matrix did not believe this behavior conformed to its Agreement with BMS.  In fact, Matrix at one point informed BMS that it would initiate steps to prevent the distribution and sale of atazanavir in Venezuela.  (*Id.* at ¶¶ 10-11.) Because, at the very least, there is a genuine issue of material fact regarding whether the Agreement has been breached, Matrix's Motion should be denied.

---

[11] Indeed, Matrix creates an issue of fact by relying upon its view of the purpose of the provision regarding selling the product to third parties.  (Mot. at 23, n.23.)  This alleged "purpose" is not memorialized in the Agreement and thus, Matrix has admitted that it is necessary to analyze outside the four corners of the Agreement.  (*See* Mot. at 21 citing *Bethlehem Steel Co. v. Turner Constr. Co.,* 2 N.Y.2d 456, 460 (1957) ("When the intention can be gathered 'from the four corners of the instrument, interpretation of the contract is a question of law ….'").)

## CONCLUSION

BMS, respectfully requests that this Court deny Defendant Mylan Laboratories Limited's

Motion to Dismiss for lack of personal jurisdiction and failure to state a claim in its entirety.  In

the alternative, BMS requests limited jurisdictional discovery.

Dated:    New York, New York
          June 10, 2013

                              MAYER BROWN LLP


                              By:     /s/ Henninger S. Bullock
                                   Richard A. Spehr
                                   Henninger S. Bullock
                                   Lisa R. Plush
                                   1675 Broadway
                                   New York, New York  10019
                                   (212) 506-2500
                                   rspehr@mayerbrown.com
                                   hbullock@mayerbrown.com
                                   lplush@mayerbrown.com


                                   *Attorneys for Plaintiff Bristol-Myers Squibb
                                   Company*

24

705682177